[No. 33280. Department Two. May 10, 1956.]

THE STATE OF WASHINGTON, *on the Relation of Chester Brinker, Respondent*, v. THE TOWN OF OAK HARBOR *et al., Appellants.*[1]

*Russell B. Johnson*, for appellants.

HILL, J.—This is an appeal from a decree of the trial court granting a writ of mandate directing the town of Oak Harbor, its mayor, its council, and its clerk, to issue a permit to Chester Brinker to move twelve buildings into the town of Oak Harbor. The town and its officers appeal. No brief has been filed and no argument made on behalf of Brinker.

The buildings in question had been constructed as part of a housing project at Renton, Washington. Brinker, after making extensive renovations and changes, expected to move them to a tract he had acquired in Oak Harbor.

[1] Reported in 296 P. (2d) 1004.

Permits to move buildings into the town are issued by the city council. The pertinent ordinance, § 5-A of ordinance No. 56, reads:

"No building shall be moved into the town of Oak Harbor which is not in a habitable condition, which is unsightly or which would constitute a menace to health, safety, or is a fire hazard; nor without a permit being first obtained."

Brinker's application for a permit was denied, and the council refused to give any reason for denying it. Brinker then commenced this action to compel the issuance of the permit. There is only one issue, and that is whether the town council of Oak Harbor abused its discretion and acted arbitrarily and capriciously in refusing to grant the permit.

At the trial, it developed that the reasons for refusing the permit were essentially two: (1) that the buildings would be unsightly, and (2) that the sanitation problem which would be created would constitute a menace to health.

(Another objection upon which the town placed much emphasis was that the buildings could not be made to conform to the town's building code, ordinance No. 61. No application for a building permit has been made; nor can one be made until the buildings have been moved into the town. Brinker stated that the buildings can be changed to meet any requirements of the building code. This ability to meet the requirements of that code is a gamble which he is prepared to take, obviously at considerable loss to himself if he fails. The trial court did not err in holding that the provisions of ordinance No. 61 have no bearing on Brinker's right to a permit to move the buildings, in the absence of a conclusive showing that they could not be made to conform to the building code.)

It appears from the testimony of the council members that they did not regard the individual units as unsightly but were fearful that the placing of twelve of them (each 720 square feet in size) on a tract measuring 417 feet by a somewhat smaller footage, would "create an unsightly, tenement-like appearance."

The trial court found that the buildings for which Brinker desired a permit

" . . . are habitable and do not constitute a menace . to safety nor are they a fire hazard. The buildings are not unsightly."

■ The evidence supports those findings. However, this is not a situation where it is sufficient that the evidence support the findings. The trial court's findings are not to be substituted for those of the town council, and the test is: Was that body arbitrary and capricious in concluding that the buildings would be unsightly?

Beyond certain structures as to which there would be practical unanimity of opinion, views as to what is an unsightly building would vary widely. *De gustibus non est disputandum.* As we read the record, no member of the council takes the position that the buildings or houses with which we are here concerned are unsightly *per se.* It is the collective presence of the buildings in the town that seems to be offensive. This, we think, is a planning and zoning problem (assuming the constitutionality of the ordinance, which gives no criteria for the determination of what is unsightly). These houses are to sell for $6,950 and are unquestionably not as "sightly" as more expensive homes; but people who prefer homes in the lower price range to a mortgage on the indeterminate future are entitled to have them if areas can be found where zoning regulations and building restrictions do not make it impossible.

■ Legislation governing the issuance of moving permits cannot be utilized to prevent the moving of buildings not themselves unsightly into an unzoned and unrestricted area. The refusal to issue a permit must be sustained, if at all, on the ground of a menace to public health.

The minutes of one of the council meetings in which the application for a permit was considered contain this statement:

"Mr. Brinker also stated that he would be willing to install a pumping system to bring the sewer to the main sewer line on 700 Avenue."

The buildings themselves would not be a menace to health. The trial court found:

"Because of the nature of the soil on the tract of land upon which relator [Brinker] intends to place the twelve buildings, the use of septic tanks for each of the twelve houses would probably create a health problem. At the time of making application for the permit the relator indicated that he would be willing to install a pumping system to bring the sewer to the main line and would thus service the structures placed upon the said premises with the City sewer system instead of using septic tanks. If the structures were connected to the City sewer there would be no menace to health."

The council's legitimate objection to the issuance of a permit was met when Brinker indicated his willingness to connect the buildings to the town sewer system and to install a pumping system to make the connection effective.

The council, we assume, could have made its granting of a permit to Mr. Brinker conditional upon his giving a bond to comply with the promise relative to sewer connections, but the trial court was right in concluding that the council had acted arbitrarily and capriciously in refusing to issue a permit. The decree directing the issuance of a writ of mandate is affirmed.

HAMLEY, C. J., MALLERY, WEAVER, and ROSELLINI, JJ., concur.